## Armstrong et al. *v.* United States Express Co., Appellant.

*Common carriers—Live stock—Negligence—Release of liability—Erasures—Evidence*

A carrier of live stock cannot by special contract relieve himself from the consequences of his own negligence.

In an action against a carrier to recover damages for the loss of a horse, it is proper to submit the case to the jury where there is evidence that the stall in the car in which the horse was being transported was negligently constructed, and that the injury happened in consequence thereof.

In an action against a carrier, a release of liability is properly excluded, where erasures appear on the face of the release, and it appears that such erasures were made by the carrier's agent, and there is no evidence that the paper was shown or read to the shipper after the erasures were made.

Argued Jan. 30, 1894.    Appeal, No. 134, July T., 1893, by defendant, from judgment of C. P. Montgomery Co., Oct. T., 1892, No. 153, on verdict for plaintiffs, Williams G. Armstrong et al.    Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ.

Trespass for loss of horse by common carrier.

At the trial, before WEAND, J., evidence for plaintiff tended to show that the partition of the stall in the car in which the horse was being transported was insecurely fastened, so that when the horse pressed against the side of the stall the partition gave way, causing the injury.

Defendants offered in evidence a release of liability of defendant company, showing erasures on its face.    The company's agent explained these erasures as follows : " A.   It was the understanding that it would release the express company as well as the railroad company from all liabilities.    I showed him this paper—it was laid right before him when he signed it.   I didn't say anything to him.   I told him this was the release to be signed.   He signed it.   I told him then that I was busy, and he was in a hurry to get out.   He then even gave me his check, and said : ' Fill this out afterwards.'   He signed it, and said : ' Fill this out afterwards, I am in a hurry to get out.'   And the same way with the release.   He said : ' I will sign it, and you can fix it up afterwards.'   And that is how the erasures came

about.　If Mr. Armstrong had remained there at the time long enough for me to fix up that release, the erasures would have been made right there in his presence, but inasmuch as he was in a hurry to get out, he simply signed the release and did not even give me a chance to fill anything in, much less make any erasures, saying I should fix up the release afterwards; that all that was required of him was his signature, and I should fix up the release afterwards, which I did."　Offer overruled and bill sealed. [1]

The court charged in part as follows:

" [It is claimed by the plaintiffs that the horse for some reason or other pressed against the side of the partition, which partition gave way because of the insecure manner in which it was arranged.　It is claimed that the side of the partition being too small to fit in, a piece had been nailed against its end which fitted in the groove so as to conceal it from casual observation, and that when the horse pressed against the side of the stall this piece gave way, causing the horse to fall on the lower piece and by his weight breaking his legs.] [7]　This is denied by the defendant, which contends that this car was not so constructed, or that, in other words, the side of the stall was not pieced out, and that will be the first question for you to decide. . . .

" [This board fitted into the groove.　How could that board have been forced out without breaking down the post if the board was intact and not spliced?　Is there any evidence before you to show that the post was broken at all?　For if the post was not broken the question arises, how could this board get out of its place?] [8]　If, therefore, you find that this car was arranged in the manner testified to by plaintiffs' witnesses, then your next question is, was that proper under the circumstances, keeping in view the purpose for which this car was intended?

"It is claimed by the plaintiffs that the defendant company knew the character of the stock to be transported, that it was blooded stock used for racing purposes, and from the very character of the animals greater care should have been taken than if they had been ordinary work horses.　If that is a fact then what should the defendant have done?　The law, as I have read it to you, required the defendant to provide against every ordinary case of this kind; it was bound to take into consider-

ation the fact that horses will be restless on the cars, that passing trains will frighten them and that they will move from side to side; and, therefore, knowing that as it was their duty to know it, it was their duty to provide a car which would ordinarily protect horses under those circumstances. Did they do it? If they did not then the law would hold them liable for any negligence resulting therefrom. . . .

" It is claimed by the defendant in this case that this accident was caused by the rearing and plunging of the animals. Now this company would not be liable for any damage resulting from any unusual conduct on the part of this horse which could not have been foreseen by them, and, therefore if the accident was caused because the horse plunged and reared in an unusual manner, in a manner that the express company had no reason to expect by ordinary foresight and prudence, then they would not be responsible, because they were only required to use ordinary diligence and prudence.

" [What is the testimony in this respect? You have the testimony of Schlimme and of Service, the two gentlemen who were in the car and who actually saw the accident happen. Schlimme testifies to you that a passing train caused this horse to swing to one side, and from part of his testimony you might infer that the horse plunged and reared.] [6] But was it in an unusual manner? Was it in any but the ordinary manner in which horses do move back when they hear an approaching train? If it was, then the express company were bound to provide against it.

" You have also heard the testimony of Service, who stood right at the rear of the horse, who says there was no rearing or plunging, but that there was a mere shoving on one side by the horse. If you believe his testimony then you will inquire whether the action of the horse was not simply of that character which is usual with horses of that kind, and which the express company was bound to provide against."

Verdict and judgment for plaintiff for $850.

*Errors assigned* were, among others, (1) rulings; (6–8) instructions, quoting instructions and bill of exceptions.

*J. S. Freeman, J. F. Keator* and *Wm. Rennyson* with him, for

appellant, cited: Smith v. Weld, 2 Pa. 54; Neff v. Horner, 63 Pa. 327; R. R. v. Yerger, 73 Pa. 121; Henderson v. R. R., 144 Pa. 461; Express Co. v. Sharpless, 77 Pa. 516; Express Co. v. Wile, 64 Pa. 201.

*Isaac Chism,* for appellees, cited: Weiller v. R. R., 134 Pa. 310; Grogan v. Express Co., 114 Pa. 528; American Express Co. v. Sands, 55 Pa. 140; 3 A. & E. Ency. L. 9, 16 *a*; Powell v. R. R., 32 Pa. 414; Ritz v. R. R., 3 Phila. 82; Empire Transp. Co. v. Oil Co., 63 Pa. 14; Laing v. Colder, 8 Pa. 479; R. R. v. Raiordon, 119 Pa. 577; Welsh v. R. R., 10 Ohio, 65; Weil v. Express Co., 7 Phila. 88.

PER CURIAM, February 12, 1894:

This was an action to recover damages for the loss of a horse which the defendant company undertook to carry from North Wales in Pennsylvania to New York city. The horse was injured, and had to be killed in consequence of alleged negligence on the part of the defendant in the construction of the stalls in the car upon which the horse was to be carried. The learned court below correctly and fairly instructed the jury as to the conditions upon which the liability of the defendant would depend, and left to them the question whether the stall in which the horse was placed was negligently or carefully built with reference to the due care of the horse. As there was considerable testimony on this subject, it was not possible to take the question of negligence away from the jury. They have found by their verdict that the stall was negligently constructed and that the injury happened in consequence thereof, and that finding disposes of that question.

The release was properly excluded. The erasures were not made when the plaintiff signed it. They were made afterwards by the defendant's agent and there is no evidence that the paper was shown or read to the plaintiff after the erasures were made. But even if the release was free from objection in this respect it could not accomplish the purpose for which it was offered. It could not release the defendant from liability for negligence, as we have frequently decided. For any other purpose it was immaterial. We think the case was properly tried.

Judgment affirmed.